IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KIMBERLY ANN PIERSON,

    Defendant.

Case No. 17-00017-02-CR-W-~~DGK~~ BP

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement.

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by Timothy A. Garrison, United States Attorney, and Alison D. Dunning, Assistant United States Attorney, and the defendant, Kimberly Ann Pierson ("the defendant"), represented by Robert G. Kuchar.

The defendant understands and agrees that this plea agreement is only between her and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby pleads guilty to the lesser-included offense of Count One of the Indictment charging her with a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, that is, conspiracy to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II

controlled substance. The defendant also agrees to forfeit to the United States the property described in the Forfeiture Allegation of the Indictment, that is, a money judgment in an amount to be determined by the Court at sentencing, which is property that is subject to forfeiture by the United States, and that represents the defendant's share of the proceeds from the herein-described criminal activity. By entering into this plea agreement, the defendant admits that she knowingly committed this offense, and is in fact guilty of this offense.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which she is pleading guilty are as follows:

> From on or about March 1, 2014, continuing until the date of the indictment, in the Western District of Missouri and elsewhere, the defendants, Lisa Marie Nagy, Kimberly Ann PIERSON (A/K/A Kimberly Gearhart/Kimberly Park/ Kimberly Snelling), Brian Lane Snelling, Lavance Tarsus Byers, Melissa Sue Robb (A/K/A Melissa Degraffenreid), and Jesse A. Lapee, did knowingly and intentionally combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, all contrary to the provisions of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and 846.

> More specifically:

> Beginning in March 2014, Jackson County Drug Task Force (JCDTF) detectives investigating a methamphetamine trafficking conspiracy conducted a series of controlled purchases of methamphetamine from a group of distributors, all of which occurred within the Western District of Missouri. Detectives also conducted surveillance, interviews, and engaged in other investigative techniques. The methamphetamine was purchased with pre-recorded JCDTF funds.

> On March 3, 2014 and March 5, 2014, a JCDTF confidential informant (CI) and undercover detective (UC) bought a total of approximately one ounce of methamphetamine mixture from Melissa Robb at 6700 E. 67th Street in Kansas City, Missouri.

> On March 13, 2014, the UC called Robb to arrange the purchase of one-half ounce of methamphetamine. Robb told the UC she had to meet with her source of supply and would call the UC when she (the source) arrived. Robb later contacted the UC and told the UC to meet her at 307 Darrel Court, Apartment 4, Liberty,

2

Missouri. Robb, her source, Kimberly PIERSON, and PIERSONs husband, Brian Snelling, were present at the apartment. Robb indicated she had another customer who wanted the half-ounce of methamphetamine. Robb and PIERSON discussed having the UC follow PIERSON and Snelling to meet with their source to conduct the transaction. Eventually, PIERSON directed the UC to the Pick-N-Pull at 8012 East Truman Road, Kansas City, Missouri to meet PIERSON and Snelling where the UC bought 20.51 grams of methamphetamine (actual). The UC arranged to buy methamphetamine directly from PIERSON and Snelling in the future.

On March 14, 2014, the UC bought 25.57 grams of methamphetamine mixture from PIERSON and Snelling at the Pick-N-Pull at 8012 E. Truman Road, Kansas City, Missouri.

On April 1, 2014, the UC bought 53.331 grams of methamphetamine (actual) from PIERSON and Snelling at the Pick-N-Pull at 8012 E. Truman Road, Kansas City, Missouri.

On April 14, 2014, the UC bought 53.49 grams of methamphetamine mixture from PIERSON supplied by Lapee at 13500 U.S. Highway 40, Independence, Missouri.

On April 29, 2014, the UC bought 54.59 grams of methamphetamine mixture from PIERSON at 4401 S. Liberty, #18, Independence, Missouri. PIERSON's source, later identified as Lavance Byers, was present. The UC bought approximately five ounces (gross weight) of methamphetamine from PIERSON (supplied by Byers) on three additional occasions between May 7, 2014 and May 22, 2014.

On June 17, 2014, the UC arranged to buy two ounces of methamphetamine from PIERSON. PIERSON indicated she had a new source of supply that she referred to as "her girl." The UC met PIERSON at her residence at 4401 S. Liberty, #18, Independence, Missouri. PIERSON got into the UC's vehicle and said Snelling went to pick up the source. PIERSON said the source did not want to meet with anyone new so PIERSON took the UC's money and returned to her apartment. Snelling arrived with a female passenger Nagy later identified as Lisa Nagy. Snelling entered PIERSON's apartment, but Nagy stayed in Snelling's truck. PIERSON exited her apartment and gave the UC 50.89 grams of methamphetamine (actual).

On June 24, 2014, the UC arranged to buy two ounces of methamphetamine from PIERSON at 4401 S. Liberty, #18, Independence, Missouri. PIERSON told the UC Snelling was going to pick up the source of supply. When the UC arrived, PIERSON exited her apartment and entered the UC's vehicle. Snelling arrived with Nagy. The UC gave the buy money to PIERSON and Snelling, PIERSON and Nagy went into PIERSON's apartment. A short time later, PIERSON came out and

3

gave methamphetamine to the UC. However, the UC noticed the amount of methamphetamine received was less than the two ounces paid for. The UC went to PIERSON's apartment to discuss the discrepancy. The UC saw Nagy standing in the kitchen weighing suspected methamphetamine. Nagy apologized to the UC about the shortage saying it was her fault and unintentional. Nagy prepared another ounce of methamphetamine and gave it to the UC. The UC received a total of 50.43 grams of methamphetamine (actual).

On July 1, 2014, the UC arranged to buy two ounces of methamphetamine from PIERSON. The UC picked PIERSON up from her apartment and drove to McDonald's at 11801 E. 40 Highway, Kansas City, Missouri where PIERSON planned to go inside the restroom of the business and obtain the methamphetamine from Nagy. Upon arrival, the UC parked next to Snelling and Nagy. The UC gave PIERSON the buy money and PIERSON and Nagy went inside the restaurant. A short time later, PIERSON returned to the UC's vehicle and gave the UC 51.03 grams of methamphetamine (actual).

Between July 17, 2014 and October 6, 2014, the UC made multiple additional undercover purchases of methamphetamine from Nagy. The purchases were made within the Western District of Missouri. The total quantity purchased was in excess of fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining her guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charge to which she is pleading guilty.

**5. Statutory Penalties.** The defendant understands that upon her plea of guilty to the lesser-included offense of Count One of the Indictment charging her with conspiracy to distribute fifty (50) grams and more of a mixture or substance containing a detectable amount of

methamphetamine, the minimum penalty the Court must impose is five (5) years imprisonment. The maximum penalty the Court can impose is forty (40) years imprisonment and a $5,000,000 fine. Additionally, the Court must impose not less than four (4) years of supervised release and a $100 mandatory special assessment, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class B felony.

**6. Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is "unreasonable";

    b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. in addition to a sentence of imprisonment, the Court must impose a term of supervised release of at least four years; and the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. if the defendant violates a condition of her supervised release, the Court may revoke her supervised release and impose an additional period of imprisonment without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release;

    e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. any sentence of imprisonment imposed by the Court will not allow for parole;

    g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office;

5

h. the defendant may not withdraw her guilty plea solely because of the nature or length of the sentence imposed by the Court;

i. The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that she will not contest any such forfeiture proceedings; and

j. The defendant agrees to forfeit all interests she owns or over which she exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), which is applicable to this action pursuant to 28 U.S.C. § 2461(c), including but not limited to the following specific property: the property described in the Forfeiture Allegation of the Indictment, that is, a money judgment in an amount to be determined by the Court at sentencing, which is property that is subject to forfeiture by the United States, and that represents the defendant's share of the proceeds from the herein-described criminal activity. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

k. The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which she, her co-defendants and her co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from March 1, 2014 to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

l. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before her sentencing;

m. The defendant states that she is the sole and rightful owner of the property described in the Forfeiture Allegation of the Indictment, that is, a money judgment in an amount to be determined by the Court at sentencing, which is property that is subject to forfeiture by the United States, and that represents the defendant's share of the proceeds from the herein-described criminal activity, and that to the best of her knowledge no one else has any ownership or other interest in the property. In the event any federal, state or local law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest she has in such property and consents to the destruction or any other disposition of the property by the

federal, state or local agency without further notice or obligation whatsoever owing to the defendant; and

n. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the conspiracy to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine for which it has venue and which arose out of the defendant's conduct described above. Additionally, the United States Attorney for the Western District of Missouri agrees to dismiss the following charges against the defendant, Kimberly Pierson, at sentencing: Counts Three, Four, Five, Six, Seven, Nine, Ten, Eleven and Twelve.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives her right to challenge the initiation of

7

the dismissed or additional charges against her if she breaches this agreement. The defendant expressly waives her right to assert a statute of limitations defense if the dismissed or additional charges are initiated against her following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against her following her breach of this plea agreement, she will not be allowed to withdraw her guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the count to which she has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i) (4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw her plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts her plea of guilty and this plea

agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, she will not be permitted to withdraw her plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The parties agree that the applicable Guideline Section for the offense of conviction is U.S.S.G. § 2D1.1 which results in a base offense level of 32;

    c. The defendant has satisfied the requirement of U.S.S.G. § 5C1.2(a)(5) and therefore may be eligible for a two-level reduction under U.S.S.G. § 2D1.1(b)(17) if it is determined that the other requirements of U.S.S.G. §§ 2D1.1(b)(17) and 5C1.2(a) are met;

    d. The parties are aware that there may be other applicable enhancements or reductions under the Guidelines. The parties reserve the right to argue the applicability of any additional enhancement or reductions at the time of the defendant's sentencing hearing. The parties agree to be bound by the determination of the Court as to the applicability of any enhancements or reductions;

    e. The defendant has admitted her guilt and clearly accepted responsibility for her actions, and has assisted authorities in the investigation or prosecution of her own misconduct by timely notifying authorities of her intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, she is entitled to a three-level reduction pursuant to § 3E1.1 of the Sentencing Guidelines unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and her pretrial release; or (2) attempts to withdraw her guilty plea, violates the law, or otherwise engages in conduct inconsistent with her acceptance of responsibility;

    f. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine her applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

g. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw her plea of guilty;

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

i. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that she will make during her plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

10

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

    a.    oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

    b.    comment on the evidence supporting the charges in the Indictment;

    c.    oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

    d.    oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that she has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. the right to plead not guilty and to persist in a plea of not guilty;

    b. the right to be presumed innocent until her guilt has been established beyond a reasonable doubt at trial;

    c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

    d. the right to confront and cross-examine the witnesses who testify against her;

    e. the right to compel or subpoena witnesses to appear on her behalf; and

    f. the right to remain silent at trial, in which case her silence may not be used against her.

The defendant understands that by pleading guilty, she waives or gives up those rights and that there will be no trial. The defendant further understands that if she pleads guilty, the Court

11

Case 4:17-cr-00017-BP   Document 123   Filed 07/16/18   Page 11 of 16

may ask her questions about the offense or offenses to which she pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making a false statement. The defendant also understands she has pleaded guilty to a felony offense and, as a result, will lose her right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights**.

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement she waives her right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from her waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations**. By entering into this plea agreement, the defendant represents that she understands and agrees to the following financial obligations:

    a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity.

    b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which she has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to her to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of her fulfillment of this obligation at the time of sentencing.

h. The defendant certifies that she has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also

13

collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of her rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of her claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw her plea of guilty.

The defendant also understands and agrees that in the event she violates this plea agreement, all statements made by her to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by her before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against her in any and all criminal proceedings. The defendant waives any rights that she might assert under the United States Constitution, any statute,

14

Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by her subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that she has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that she is satisfied with the assistance of counsel, and that counsel has fully advised her of her rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, her attorneys or any other party to induce her to enter her plea of guilty.

21. **No Undisclosed Terms**. The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement does not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any

15

drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Timothy A. Garrison
United States Attorney

Dated: 7/12/18

_____
Alison D. Dunning
Assistant United States Attorney
Narcotics & Violent Crimes Unit

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 7/12/18

_____
Kimberly Ann Pierson
Defendant

I am defendant Kimberly Ann Pierson's attorney. I have fully explained to her her rights with respect to the offense charged in the Indictment. Further, I have reviewed with her the provisions of the Sentencing Guidelines that might apply in this case. I have carefully reviewed every part of this plea agreement with her. To my knowledge, Kimberly Ann Pierson's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 7/12/18

_____
Robert G. Kuchar
Attorney for Defendant Kimberly Ann Pierson